CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

September 01, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **ROBERT LEE BARNES,** | ) | **Case No. 7:24-cv-00205** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **LEAH JESSEE, et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Robert Lee Barnes ("Barnes"), a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983. His Complaint names seven defendants: Nurse Practitioner Leah Jessee, Dr. Kevin Fox, Physical Therapist Rebecca Bevins,[1] prisons officials J. Bledsoe, D. Trent, Jeffery Dillman, and Shannon Fuller. Barnes alleges that "Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment," because "the Defendants failed to adequately respond to [Barnes'] complaints of: (1) trigger points (knotted muscles) and resultant chronic back pain/stiffness; and (2) chronic pain [Barnes] daily experiences in the high arches of his feet." Dkt. 1. He is requesting the Court "Order the Defendants to jointly and severally pay [Barnes] nominal, compensatory, and punitive damages" and "[d]eclare the Defendants violated [Barnes's] constitutional rights." *Id*.

Pending before the Court is Barnes' Motion for Summary Judgment against Defendant Jessee, arguing that Defendant Jessee retaliated against him by refusing to treat him on April 4, 2022 after Barnes refused treatment on March 22, 2022 in violation of his First Amendment

[1] Bevins is identified as "Defendant Doe" in the Complaint. Dkt. 1. The docket has been updated to reflect the identification of the previously unknown defendant.

right,[2] and that Defendant Jessee was deliberately indifferent to Barnes' serious medical needs, chronic back pain and high arch pain, in violation of his Eighth Amendment right. (Dkt. 59). Defendant Jessee filed a response disputing the facts as Barnes alleges as well as elements of his claims (Dkt. 62), which makes the Motion ripe for my review. After reviewing the record and the parties' submissions, I will deny Barnes's Motion.

## I. FACTS

The following summary of the facts is taken from the Complaint and additional materials filed by Barnes. *See Holley v. Combs*, 134 F.4th 142, 144 (4th Cir. 2025) ("In order to determine whether the claim of a *pro se* plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff.") (internal quotation marks and brackets omitted). The factual allegations are presented in the light most favorable to Jessee. *See Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (noting that a court reviewing a motion to dismiss must "accept all factual allegations as true and draw all reasonable inferences in favor of the [nonmoving party]").

At all times relevant to the Complaint, Barnes was incarcerated at Red Onion State Prison ("Red Onion"), a maximum-security state prison operated by the Virginia Department of Corrections ("VDOC"). Dkt. 1. Barnes suffers from "'[m]yofascial [t]rigger [p]oints' in the muscles of his back" which cause "pain and strain throughout the muscle; muscle weakness; and decreased range of motion." *Id*. Barnes's trigger points cause him to suffer from "Myofacscial Trigger Syndrome," a chronic condition which causes Barnes to experience "chronic pain and

---

[2] Barnes attempts to raise a new claim against Defendant Jessee in his Motion for Summary Judgment. To the extent that Defendant Jessee addresses it in her response, I will entertain the new claim.

stiffness in the muscles of his back." *Id*. According to Barnes, his pain "usually ranges between a four and six, but it can range up to an eight" on a scale of one to ten. *Id*.

Shortly after being transferred to Red Onion, Barnes alleges that he spoke to Defendant Jessee on November 10, 2021, about his medical condition and that on an unknown date, Defendant Jessee referred Barnes to an orthopedist for consultation. *Id*. On December 27, 2021, Barnes met with the orthopedic doctor, who "questioned Plaintiff about his pain, palpated Plaintiff's back, and discovered the presence of trigger points." *Id*. The orthopedist "stated Plaintiff is suffering from Myofascial Pain Syndrome" and recommended Defendant Jessee "treat Plaintiff with 'a tennis ball to roll on for trigger point relief.'" *Id*. There is no indication of the recommended frequency or duration of the treatment.

On December 30, 2021, Barnes met with Defendant Jessee "complaining of back pain/stiffness." *Id*. Defendant Jessee informed Barnes that she "tried to prescribe Plaintiff a tennis ball pursuant to the recommendation, but Defendant Fuller[, Red Onion Assistant Warden] denied the request because he believed the tennis ball threatened security." *Id*. In response, Defendant Jessee suggested that Barnes lie down on a pair of rolled up socks, to which Barnes replied, the suggestion would not work because the socks would flatten under his body weight, which he apparently previously tried while being housed at other prison facilities. *Id*. Defendant Jessee suggested he try the rolled-up socks again because Defendant Fuller would not allow Barnes to have the tennis ball. *Id*.

On January 19, 2022, Barnes asked Defendant Fuller "to explain why he disapproved Defendant Jessee from prescribing the tennis ball to treat Plaintiff," to which Fuller replied, according to Barnes, "[Fuller] has never seen a tennis ball be given to an inmate to treat the inmate's medical conditions on any maximum-security prison." *Id*. Barnes then told Defendant

Fuller that Defendant Jessee had advised Barnes to use rolled up socks, which flatten under Barnes' body weight. *Id*. Defendant Fuller allegedly responded "'[t]ry using other things until you figure it out.'" *Id*.

On March 3, 2022, Barnes again visited Defendant Jessee complaining of pain/stiffness and stated the rolled-up socks were not working "because the socks flatten under his body weight." *Id*. Defendant Jessee advised Barnes "to lie down on a shampoo bottle filled with water or to use any round object that he has in his cell." *Id*. Then, on March 17, 2022, Defendant Jessee "summoned" Barnes to the medical department and advised Barnes "to treat his trigger points by lying on a shampoo bottle filled with water; by lying on balled up paper; or by rounding a bar of soap, placing it into a sock, and lying on it." *Id*. Barnes advised that the shampoo bottle cap pops off when Barnes lies on it, the rolled-up paper flattens under his body weight, and Barnes refused to use a rounded bar of soap in a sock because "[s]ecurity could charge him for possessing a weapon." *Id*. Barnes "asked Defendant Jessee to prescribe a Styrofoam ball or a foam composite ball to treat his trigger points. [Barnes] asked to be given the ball or to be allowed to use it daily in the Medical Department." *Id*. Defendant Jessee advised that security would not allow it and instead scheduled Barnes for an appointment with Defendant Bevins, the institutional physical therapist. *Id*.

On March 22, 2022, Barnes met with Defendants Bevins and Jessee. Defendant Bevins offered the same suggestions that Defendant Jessee previously prescribed: to lay on a shampoo bottle filled with water, to lay on balled up pieces of paper, or to use a round bar of soap in a sock. Barnes explained that both the bottle and the balled-up pieces of paper collapse under his body weight and security could charge him with possessing a weapon for having a sock with a rounded bar of soap. *Id*. Defendant Bevins allegedly advised Barnes that he would not be

charged because he is using it for treatment. *Id*. Barnes thereafter requested that Defendants Bevins and Jessee obtain written permission from security allowing Barnes to possess soap in a sock, but Defendants "refused and insisted [Barnes] follow [Bevins'] instructions. At that point, [Barnes] terminated the visit." *Id*.

On April 4, 2022, Barnes presented himself to Defendant Jessee, "complaining of bruising and chronic pain in the arches of [Barnes'] feet." *Id*. Barnes indicated that on a scale of one to ten, "his pain is sometimes a 2/3 and that other times it is a 5." *Id*. Defendant Jessee examined Barnes' feet and prescribed gel insoles and arch supports. Barnes again raised the issue of his pain related to his trigger points and again requested that Defendant Jessee "seek permission to prescribe him a Styrofoam ball or a foam-composite ball to use in Medical, but [Defendant Jessee] denied the request," and "stated she would not do anything else for [Barnes's] trigger points because he walked out of the meeting with [Defendant Jessee] and Defendant [Bevins]." *Id*.

Two days later on April 6, 2022, Barnes "complained to the Warden that Defendant Jessee refused to treat his trigger points on April 4th and that Jessee previously told [Barnes] to treat his trigger points by rounding a bar of soap, placing it into a sock, and lying on it." *Id*. According to the Complaint, the Warden indicated he would speak to Defendants Jessee and Bledsoe about Barnes's treatment. *Id*. On April 8, 2022, Barnes received gel insoles and arch supports. *Id*.

On May 3, 2022, Barnes returned to Defendant Jessee complaining that the gel insoles and arch supports were not alleviating his foot pain and requested a referral to an orthopedist in order to obtain orthotic shoes. *Id*. Defendant Jessee again examined Barnes' feet and explained that "VDOC policy does not allow [Defendant Barnes] to refer [Barnes] to an orthopedist for

further treatment." *Id*. Barnes filed a complaint against Defendant Jessee on May 4, 2022, stating the gel insoles and arch supports are "ineffective in treating his foot pain …[and] asked to be referred to an orthopedist to receive orthotic shoes." *Id*. Defendant Bledsoe, who, at the time, was the "Health Authority" at Red Onion responded to Barnes' complaint, stating "'[p]er policy, you do not meet the criteria for orthotic shoes. Spoke with provider. You will be referred to the western region medical provider,' who is Defendant Fox." *Id*.

On May 9, 2022, Defendant Jessee informed Barnes that beginning May 12, 2022, Barnes would be allowed to "come to Medical once a week for 30 minutes to treat his trigger points. She stated she found a therapy ball for him to use." In response, Barnes stated "he needs to be able to use the ball daily." *Id*. Defendant Jessee "reaffirmed [Barnes] will only be allowed to use the ball once a week for 30 minutes." *Id*.

On May 26, 2022, Barnes attended "Medical" to use the therapy ball. *Id*. Defendant Jessee inquired as to whether the therapy ball "has been alleviating his pain." *Id*. Barnes' response was that he received relief when using it but indicated that his pain returns "later in the day." *Id*. At that time, Barnes "asked [Defendant Jessee] to allow him to visit Medical more frequently to use the ball or to seek permission to let him possess the ball in his cell." *Id*. Defendant Jessee again reiterated to Barnes that he would be scheduled once per week to use the therapy ball and that security would not allow him to possess the ball in his cell. *Id*.

Later that morning, Defendant Fox examined Barnes regarding his complaints about his foot pain. Barnes discussed with Defendant Fox his foot pain and that the gel insoles and arch supports Defendant Jessee prescribed were not alleviating his foot pain. Defendant Fox examined Barnes's feet. Barnes requested "to be referred to an orthopedist to get orthotic shoes," a request Defendant Fox denied, stating "VDOC policy does not allow [Dr. Fox] to refer

prisoners to an orthopedist for treatment of high arches … that prisoners cannot get orthotic shoes unless they have a deformity … and that the VDOC does not consider high arches to be a deformity requiring orthotic shoes." *Id*. Defendant Fox told Barnes to continue using the arch supports. *Id*.

At a later unknown date, Barnes filed a grievance with Defendant Dillman, Chief of Operations for the VDOC's Health Services Unit. *Id*. In his grievance, Barnes explained that he has high arches, experiences pain when walking, that the arch supports prescribed to treat his high arches were ineffective, that he requested Defendant Fox to refer him to an orthopedist for orthotic shoes and that Defendant Fox told Barnes "VDOC policy does not authorize him to receive orthotic shoes for treatment of high arches; and Defendant Fox told him he has no choice but to continue using the arch supports." *Id*. Barnes requested that Defendant Dillman refer him to an orthopedist for orthotic shoes or in the alternative, Barnes requested that Dillman provide "arch supports that conform to his arches." *Id*. According to Barnes, Defendant Dillman "failed to take corrective action in response to Plaintiff's grievance." *Id*.

On July 14, 2022, Barnes requested that Defendant Bledsoe allow Barnes to come to Medical more frequently throughout the week to use the therapy ball. Barnes claimed that his trigger-point therapy is inadequate and that "he has complained to Defendant Jessee multiple times, but Jessee fails to respond to his complaint." *Id*. Defendant Bledsoe "denied his request and directed [Barnes] to again speak to Jessee about the issue." *Id*.

On August 18, 2022, Barnes submitted another grievance to Defendant Dillman, stating that Barnes has "'repeatedly complained to Medical that [his] treatment [for trigger-point therapy] is inadequate, but [prison staff] fail to take action due to security reasons… Please tell Medical to let me possess the therapeutic ball, or tell them to let me visit medical more

frequently during the week … Please order staff to re-evaluate my treatment plan.'" *Id.*[3] Barnes again alleges that Defendant Dillman "failed to take action in response to Plaintiff's complaint." *Id*.

On October 25, 2022, Defendant Dillman responded to Barnes' complaints stating "[b]ased on your information provided and upon further communication with your institution's Medical Department, it was reported by Medical that you have been prescribed the appropriate treatment. Security has the final say as to what is allowed to be kept in the cell. As always, if you have any medical issues, please submit a sick call request for further evaluation of your medical needs and treatment plan. You are encouraged to follow the recommendations of the health care staff as they are trained to provide you clinical care. No further action is needed from this level." *Id.*

On April 21, 2023, Barnes again visited Defendant Fox, complaining that the arch supports are inadequate. *Id*. Defendant Fox remembered Barnes from his previous appointment, reminded Barnes of VDOC's policy regarding orthotic shoes, and again stated that Barnes will need to continue using his arch support. *Id*. Barnes then complained that his trigger-point therapy was inadequate, stating that his treatment plan included only one weekly 30-minute session with a therapy ball. *Id*. Barnes alleges that Defendant Fox stated he would "look into seeing if [Barnes] could visit Medical more often to use the therapy ball." *Id*. On May 24, 2023, Barnes was transferred to River North Correctional Center, a medium-security prison. *Va. Dep't of Corr. Inmate Locator*, available at https://vadoc.virginia.gov/general-public/inmate-and-

[3] Original text of relevant sentence from ¶ 33 stated "On August 18, 2022, Plaintiff submitted a grievance appeal … In the grievance appeal, he stated, 'I have repeatedly complained to Medical that my treatment [for trigger-point therapy] is inadequate, but they fail to take action due to security reasons."

supervisee-locator/inmate-search-results/?key=bf0b435b-5712-4fd9-98d2-e06e003a714a, *archived at* https://perma.cc/M784-H7VW.

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A movant is entitled to summary judgment only if the record as a whole *could not* lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).[4] On the other hand, where the ultimate factual conclusions to be drawn are in dispute, summary judgment is not appropriate. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility at the summary judgment stage. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995).

In considering a motion for summary judgment under Rule 56, a court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Jacobs v. N.C. Admin. Off. Of the Cts.*, 780 F.3d 565 n.1 (4th Cir. 2015). The court "scrutinizes" each party's case "to determine whether the [party] has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993). A nonmovant, to defeat a motion for summary judgment supported by affidavits, "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty*

[4] The court has omitted internal quotation marks, alterations, or citations here and throughout this opinion, unless otherwise noted.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). Detailed factual allegations in a verified, *pro se* complaint, if based on personal knowledge, may be sufficient to withstand a motion for summary judgment with supporting affidavits containing a conflicting version of the facts. *Williams*, 952 F.2d at 823. The court's summary judgment inquiry is whether the evidence, taken in the light most favorable to the nonmoving party, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**1. Retaliation Claim**

An official action motivated by retaliation for the plaintiff's exercise of a constitutionally protected right can violate the First Amendment, even if the act, when taken for a different reason, might have been legitimate. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977). However, merely conclusory allegations of retaliation cannot suffice to state any constitutional violation actionable claim under § 1983. *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). In addition, courts must treat an inmate's claim of retaliation by prison officials "with skepticism because [e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). To succeed on a § 1983 retaliation claim, a plaintiff "must allege that (1) he engaged in conduct protected under the First Amendment, (2) the defendant took some action that adversely affected the plaintiff's First Amendment rights, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (quoting *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)).

Barnes argues that he exercised his First Amendment right to refuse medical treatment when he terminated the March 22, 2022 consultation with Defendant Jessee. In her response, Defendant Jessee adamantly disputes the facts as Barnes alleges and argues that Barnes is not entitled to Summary Judgment because he has not proven any of the elements of a retaliation claim. Since Barnes and Jessee present material disputes of fact under the summary judgment standard, the disputes should be decided by a trier of fact and Barnes' Motion for Summary Judgment as to his retaliation claim is denied.

**2. Eighth Amendment Claims**

"The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a prison official or healthcare provider "demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.*

Barnes claims that Jessee violated his right under the Eighth Amendment because she was deliberately indifferent to his serious medical needs. Defendant Jessee argues that Barnes has failed to provide sufficient facts to prove a medical deliberate indifference claim. As with Barnes' Eighth Amendment claim, there are material disputes between the parties that are proper for the jury to decide. Accordingly, I find that Barnes' Motion for Summary Judgment related to his Eighth Amendment claim must be denied.

## III. CONCLUSION

For the reasons stated, I will deny Barnes' Motion for Summary Judgment under Rule 56. Appropriate orders accompany this opinion.

Entered: September 1, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge