CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 02, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **ROBERT LEE BARNES,** | ) | **Case No. 7:24-cv-00205** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **LEAH JESSEE, et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Robert Lee Barnes ("Barnes"), a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983. His Complaint names seven defendants: Nurse Practitioner Leah Jessee, Dr. Kevin Fox, Physical Therapist Rebecca Bevins,[1] prisons officials J. Bledsoe, D. Trent, Jeffery Dillman, and Shannon Fuller.[2] Barnes alleges that "Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment," because "the Defendants failed to adequately respond to [Barnes'] complaints of: (1) trigger points (knotted muscles) and resultant chronic back pain/stiffness; and (2) chronic pain [Barnes] daily experiences in the high arches of his feet." Dkt. 1. He is requesting the Court "Order the Defendants to jointly and severally pay [Barnes] nominal, compensatory, and punitive damages" and "[d]eclare the Defendants violated [Barnes's] constitutional rights." *Id*. Pending before the Court is Bevins' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.[3] Dkt. 35-36.

---

[1] Bevins is identified as "Defendant Doe" in the Complaint. Dkt. 1. The docket has been updated to reflect the identification of the previously unknown defendant.
[2] On August 31, 2026, Defendants Dillman and Fuller were terminated as parties to the action.
[3] Plaintiff has moved for summary judgment against Defendant Jessee, which will be addressed in a separate opinion.

For the reasons set forth below, I conclude that Barnes has not set forth sufficient facts to state a plausible claim under § 1983 against Bevins. Therefore, Bevins' Motion to Dismiss is granted. All claims against Defendant Bevins are dismissed.

## I. FACTS

The following summary of the facts is taken from the Complaint and additional materials filed by Barnes. *See Holley v. Combs*, 134 F.4th 142, 144 (4th Cir. 2025) ("In order to determine whether the claim of a *pro se* plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff.") (internal quotation marks and brackets omitted). The factual allegations are presented in the light most favorable to Barnes. *See Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (noting that a court reviewing a motion to dismiss must "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff").

At all times relevant to the Complaint, Barnes was incarcerated at Red Onion State Prison ("Red Onion"), a maximum-security state prison operated by the Virginia Department of Corrections ("VDOC"). Dkt. 1. Barnes suffers from "'[m]yofascial [t]rigger [p]oints' in the muscles of his back" which cause "pain and strain throughout the muscle; muscle weakness; and decreased range of motion." *Id*. Barnes' trigger points cause him to suffer from "Myofacscial Trigger Syndrome," a chronic condition which causes Barnes to experience "chronic pain and stiffness in the muscles of his back." *Id*. According to Barnes, his pain "usually ranges between a four and six, but it can range up to an eight" on a scale of one to ten. *Id*.

Shortly after being transferred to Red Onion, Barnes alleges that he spoke to Defendant Jessee on November 10, 2021, about his medical condition and that on an unknown date, Defendant Jessee referred Barnes to an orthopedist for consultation. *Id*. On December 27, 2021,

Barnes met with the orthopedic doctor, who "questioned Plaintiff about his pain, palpated Plaintiff's back, and discovered the presence of trigger points." *Id.* The orthopedist "stated Plaintiff is suffering from Myofascial Pain Syndrome" and recommended Defendant Jessee "treat Plaintiff with 'a tennis ball to roll on for trigger point relief.'" *Id.* There is no indication of the recommended frequency or duration of the treatment.

On December 30, 2021, Barnes met with Defendant Jessee "complaining of back pain/stiffness." *Id.* Defendant Jessee informed Barnes that she "tried to prescribe Plaintiff a tennis ball pursuant to the recommendation, but Defendant Fuller[, Red Onion Assistant Warden] denied the request because he believed the tennis ball threatened security." *Id.* In response, Defendant Jessee suggested that Barnes lie down on a pair of rolled up socks, to which Barnes replied, the suggestion would not work because the socks would flatten under his body weight, which he apparently previously tried while being housed at other prison facilities. *Id.* Defendant Jessee suggested he try the rolled-up socks again because Defendant Fuller would not allow Barnes to have the tennis ball. *Id.*

On January 19, 2022, Barnes asked Defendant Fuller "to explain why he disapproved Defendant Jessee from prescribing the tennis ball to treat Plaintiff," to which Fuller replied, according to Barnes, "[Fuller] has never seen a tennis ball be given to an inmate to treat the inmate's medical conditions on any maximum-security prison." *Id.* Barnes then told Defendant Fuller that Defendant Jessee had advised Barnes to use rolled up socks, which flatten under Barnes' body weight. *Id.* Defendant Fuller allegedly responded "'[t]ry using other things until you figure it out.'" *Id.*

On March 3, 2022, Barnes again visited Defendant Jessee complaining of pain/stiffness and stated the rolled-up socks were not working "because the socks flatten under his body

weight." *Id*. Defendant Jessee advised Barnes "to lie down on a shampoo bottle filled with water or to use any round object that he has in his cell." *Id*. Then, on March 17, 2022, Defendant Jessee "summoned" Barnes to the medical department and advised Barnes "to treat his trigger points by lying on a shampoo bottle filled with water; by lying on balled up paper; or by rounding a bar of soap, placing it into a sock, and lying on it." *Id*. Barnes advised that the shampoo bottle cap pops off when Barnes lies on it, the rolled-up paper flattens under his body weight, and Barnes refused to use a rounded bar of soap in a sock because "[s]ecurity could charge him for possessing a weapon." *Id*. Barnes "asked Defendant Jessee to prescribe a Styrofoam ball or a foam composite ball to treat his trigger points. [Barnes] asked to be given the ball or to be allowed to use it daily in the Medical Department." *Id*. Defendant Jessee advised that security would not allow it and instead scheduled Barnes for an appointment with Defendant Bevins, the institutional physical therapist. *Id*.

On March 22, 2022, Barnes met with Defendants Bevins and Jessee. Defendant Bevins offered the same suggestions that Defendant Jessee previously prescribed: to lay on a shampoo bottle filled with water, to lay on balled up pieces of paper, or to use a round bar of soap in a sock. Barnes explained that both the bottle and the balled-up pieces of paper collapse under his body weight and security could charge him with possessing a weapon for having a sock with a rounded bar of soap. *Id*. Defendant Bevins allegedly advised Barnes that he would not be charged because he is using it for treatment.[4] *Id*. Barnes thereafter requested that Defendants Bevins and Jessee obtain written permission from security allowing Barnes to possess soap in a

[4] It should be noted that Defendant Bevins at the time was an outside provider with the prison system and may not have recognized any security concerns with regard to her recommendation. As it applies in the prison context, correctional officers within the prison, not medical professionals, are better positioned, have a better understanding, and ultimately are the arbiters of security-related decisions.

sock, but Defendants "refused and insisted [Barnes] follow [Bevins'] instructions. At that point, [Barnes] terminated the visit." *Id.*

On April 4, 2022, Barnes presented himself to Defendant Jessee, "complaining of bruising and chronic pain in the arches of [Barnes'] feet." *Id.* Barnes indicated that on a scale of one to ten, "his pain is sometimes a 2/3 and that other times it is a 5." *Id.* Defendant Jessee examined Barnes' feet and prescribed gel insoles and arch supports. Barnes again raised the issue of his pain related to his trigger points and again requested that Defendant Jessee "seek permission to prescribe him a Styrofoam ball or a foam-composite ball to use in Medical, but [Defendant Jessee] denied the request," and "stated she would not do anything else for [Barnes's] trigger points because he walked out of the meeting with [Defendant Jessee] and Defendant [Bevins]." *Id.*

Two days later on April 6, 2022, Barnes "complained to the Warden that Defendant Jessee refused to treat his trigger points on April 4th and that Jessee previously told [Barnes] to treat his trigger points by rounding a bar of soap, placing it into a sock, and lying on it." *Id.* According to the Complaint, the Warden indicated he would speak to Defendants Jessee and Bledsoe about Barnes's treatment. *Id.* On April 8, 2022, Barnes received gel insoles and arch supports. *Id.*

On May 3, 2022, Barnes returned to Defendant Jessee complaining that the gel insoles and arch supports were not alleviating his foot pain and requested a referral to an orthopedist in order to obtain orthotic shoes. *Id.* Defendant Jessee again examined Barnes' feet and explained that "VDOC policy does not allow [Defendant Barnes] to refer [Barnes] to an orthopedist for further treatment." *Id.* Barnes filed a complaint against Defendant Jessee on May 4, 2022, stating the gel insoles and arch supports are "ineffective in treating his foot pain …[and] asked to

be referred to an orthopedist to receive orthotic shoes." *Id*. Defendant Bledsoe, who, at the time, was the "Health Authority" at Red Onion responded to Barnes' complaint, stating "'[p]er policy, you do not meet the criteria for orthotic shoes. Spoke with provider. You will be referred to the western region medical provider,' who is Defendant Fox." *Id*.

On May 9, 2022, Defendant Jessee informed Barnes that beginning May 12, 2022, Barnes would be allowed to "come to Medical once a week for 30 minutes to treat his trigger points. She stated she found a therapy ball for him to use." In response, Barnes stated "he needs to be able to use the ball daily." *Id*. Defendant Jessee "reaffirmed [Barnes] will only be allowed to use the ball once a week for 30 minutes." *Id*.

On May 26, 2022, Barnes attended "Medical" to use the therapy ball. *Id*. Defendant Jessee inquired as to whether the therapy ball "has been alleviating his pain." *Id*. Barnes' response was that he received relief when using it but indicated that his pain returns "later in the day." *Id*. At that time, Barnes "asked [Defendant Jessee] to allow him to visit Medical more frequently to use the ball or to seek permission to let him possess the ball in his cell." *Id*. Defendant Jessee again reiterated to Barnes that he would be scheduled once per week to use the therapy ball and that security would not allow him to possess the ball in his cell. *Id*.

Later that morning, Defendant Fox examined Barnes regarding his complaints about his foot pain. Barnes discussed with Defendant Fox his foot pain and that the gel insoles and arch supports Defendant Jessee prescribed were not alleviating his foot pain. Defendant Fox examined Barnes's feet. Barnes requested "to be referred to an orthopedist to get orthotic shoes," a request Defendant Fox denied, stating "VDOC policy does not allow [Dr. Fox] to refer prisoners to an orthopedist for treatment of high arches … that prisoners cannot get orthotic shoes unless they have a deformity … and that the VDOC does not consider high arches to be a

deformity requiring orthotic shoes." *Id*. Defendant Fox told Barnes to continue using the arch supports. *Id*.

At a later unknown date, Barnes filed a grievance with Defendant Dillman, Chief of Operations for the VDOC's Health Services Unit. *Id*. In his grievance, Barnes explained that he has high arches, experiences pain when walking, that the arch supports prescribed to treat his high arches were ineffective, that he requested Defendant Fox to refer him to an orthopedist for orthotic shoes and that Defendant Fox told Barnes "VDOC policy does not authorize him to receive orthotic shoes for treatment of high arches; and Defendant Fox told him he has no choice but to continue using the arch supports." *Id*. Barnes requested that Defendant Dillman refer him to an orthopedist for orthotic shoes or in the alternative, Barnes requested that Dillman provide "arch supports that conform to his arches." *Id*. According to Barnes, Defendant Dillman "failed to take corrective action in response to Plaintiff's grievance." *Id*.

On July 14, 2022, Barnes requested that Defendant Bledsoe allow Barnes to come to Medical more frequently throughout the week to use the therapy ball. Barnes claimed that his trigger-point therapy is inadequate and that "he has complained to Defendant Jessee multiple times, but Jessee fails to respond to his complaint." *Id*. Defendant Bledsoe "denied his request and directed [Barnes] to again speak to Jessee about the issue." *Id*.

On August 18, 2022, Barnes submitted another grievance to Defendant Dillman, stating that Barnes has "'repeatedly complained to Medical that [his] treatment [for trigger-point therapy] is inadequate, but [prison staff] fail to take action due to security reasons… Please tell Medical to let me possess the therapeutic ball, or tell them to let me visit medical more

frequently during the week … Please order staff to re-evaluate my treatment plan.'" *Id.*[5] Barnes again alleges that Defendant Dillman "failed to take action in response to Plaintiff's complaint." *Id.*

On October 25, 2022, Defendant Dillman responded to Barnes' complaints stating "[b]ased on your information provided and upon further communication with your institution's Medical Department, it was reported by Medical that you have been prescribed the appropriate treatment. Security has the final say as to what is allowed to be kept in the cell. As always, if you have any medical issues, please submit a sick call request for further evaluation of your medical needs and treatment plan. You are encouraged to follow the recommendations of the health care staff as they are trained to provide you clinical care. No further action is needed from this level." *Id.*

On April 21, 2023, Barnes again visited Defendant Fox, complaining that the arch supports are inadequate. *Id.* Defendant Fox remembered Barnes from his previous appointment, reminded Barnes of VDOC's policy regarding orthotic shoes, and again stated that Barnes will need to continue using his arch support. *Id.* Barnes then complained that his trigger-point therapy was inadequate, stating that his treatment plan included only one weekly 30-minute session with a therapy ball. *Id.* Barnes alleges that Defendant Fox stated he would "look into seeing if [Barnes] could visit Medical more often to use the therapy ball." *Id.* On May 24, 2023, Barnes was transferred to River North Correctional Center, a medium-security prison. *Va. Dep't of Corr. Inmate Locator*, available at https://vadoc.virginia.gov/general-public/inmate-and-

[5] Original text of relevant sentence from ¶ 33 stated "On August 18, 2022, Plaintiff submitted a grievance appeal … In the grievance appeal, he stated, 'I have repeatedly complained to Medical that my treatment [for trigger-point therapy] is inadequate, but they fail to take action due to security reasons."

supervisee-locator/inmate-search-results/?key=bf0b435b-5712-4fd9-98d2-e06e003a714a, *archived at* https://perma.cc/M784-H7VW.

## II. DISCUSSION

### A. Motion to Dismiss Standard

A Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss "tests the sufficiency of a complaint." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). When analyzing a motion to dismiss for failure to state a claim, the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, liberal construction is not without limits as "district courts are not the legal advocates of pro se litigants." *Jackson v. Dameron*, 171 F.4th 641, 650 (4th Cir.

2026). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from ... fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985). Additionally, courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted).

Barnes filed suit against defendant Bevins under 42 U.S.C. § 1983, which imposes liability on any "person" who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Since Barnes seeks to recover monetary damages under § 1983, the court construes the claims against the defendant as being brought against her in her individual capacity.[6]

**1. Eighth Amendment Claims**

Barnes claims each of the individual defendants violated his rights under the Eighth Amendment. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a prison official or healthcare provider "demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id*.

---

[6] Although § 1983 "permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their *official* capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." *Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020) (emphasis added).

Barnes appears to allege that Defendant Bevins, a direct provider of medical care to Barnes, was deliberately indifferent when she did not provide treatment that was sufficient to treat all of Barnes' symptoms related to his trigger points.[7] In her Motion to Dismiss, Defendant Bevins argues that the claim against her should be dismissed because Barnes' "fail[s] to show that Defendant Bevins engaged in conduct that could amount to a constitutional violation." Dkt. 36.

An Eighth Amendment claim of deliberate indifference has two components. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). The plaintiff must show that he had serious medical needs (the objective component) and that a defendant acted with deliberate indifference to those needs (the subjective component). *Hixson v. Moran*, 1 F. 4th 297, 302 (4th Cir. 2021). A medical need is sufficiently serious for purposes of the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gordon v. Shilling*, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted).

The subjective component requires an inmate to show that a defendant "subjectively knew of and disregarded an excessive risk to the inmate's health or safety." *Hixson*, 1 F. 4th at 302. "That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F. 3d at 178. To establish an Eighth Amendment violation, "it is not enough that an official *should* have known the risk; he or she

[7] As Barnes does not present any information to indicate that Defendant Bevins was in any way involved in the treatment of his high arch foot pain, I do not address it.

must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id*.

The United States Court of Appeals for the Fourth Circuit has explained that the mere fact than an inmate received "*some* treatment" for a condition does not necessarily mean that an inmate received "*constitutionally adequate* treatment." *De'Lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013). Nevertheless, an inmate "does not enjoy a constitutional right to the treatment of his or her choice," *id*., and a mere "[d]isagreement[] between an inmate and a physician over the inmate's proper medical care … fall[s] short of showing deliberate indifference." *Jackson*, 775 F.3d at 178 (internal quotation marks omitted). Instead, "the treatment given must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hixson*, 1 F. 4th at 303 (internal quotation marks omitted).

Barnes alleges he had chronic back and foot pain. His claim against Defendant Bevins revolves around her one consultation provided on March 22, 2022, regarding treatment of his trigger points, which are the underlying cause of his chronic back pain. Dkt. 1. For purposes of this opinion, the court assumes that Barnes's chronic back constitutes a "serious medical condition." Even so, the facts he has alleged are insufficient to establish that Defendant Bevins was deliberately indifferent to that condition and fails to state a claim.

Barnes contends that since his arrival at Red Onion, he had been in constant contact with Defendant Jessee about his chronic back pain and that Defendant Jessee had referred him to an orthopedist for treatment of his trigger points. While the orthopedist prescribed "'a tennis ball to roll on for trigger point relief,'" there is no indication of the recommended frequency or duration of the treatment. *Id*. As a medical professional and medical provider for Barnes, Defendant Jessee prescribed a tennis ball for Barnes' treatment. However, for security reasons, Barnes was

not allowed to have the tennis ball *in his cell*. In response, Defendant Jessee prescribed a variety of treatment methods, all of which Barnes claimed were ineffective. After further complaints, Defendant Jessee set up a medical consultation for Barnes with Defendant Bevins, a physical therapist. Defendant Bevins relayed the same advice to Barnes as Defendant Jessee had and when it became clear that Barnes would not receive the course of treatment he wanted, he walked out of his appointment with both medical providers.

Based on the facts as alleged against Defendant Bevins, Barnes disagreed with the course of treatment that was being provided to him. While prison officials must provide adequate medical care, there is no constitutional right to the treatment of the inmate's choice, *De'Lonta*, 708 F.3d at 526, and a mere disagreement between an inmate and the treating medical profession does not satisfy the deliberate indifference standard. *Jackson*, 775 F.3d at 178 (internal quotation marks omitted). Barnes wanted to use a tennis ball in his cell, a request which was denied for security reasons. In response, Barnes was offered other treatment options, but Barnes wanted a tennis ball in his cell. An additional treatment option was the use of a therapy ball once a week in the medical department, an option prescribed by Barnes's trained medical provider. Again, Barnes did not agree with the course of treatment and refused to attend sessions.[8]

---

[8] In his opposition brief to the Motion to Dismiss, Barnes now asserts for the first time that Bevins "provided grossly inadequate medical attention when she instructed [Barnes] to manufacture a weapon (i.e. soap-in-a-sock) to treat his conditions" and his response to the Motion to Dismiss largely focuses on that argument. Dkt. 39. However, it is well-settled that parties are not permitted to amend a Complaint through briefing. "[I]t is … 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F.Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (quoting *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)); *Bell v. True Mfg. Co.*, No. 2:20-cv-00263, 2020 WL 10095356, at *3 (E.D. Va. Sept. 16, 2020) (rejecting new allegations and facts asserted in an opposition brief); *Hooker v. Disbrow*, No. 1:16-cv-001588, 2017 WL 1377696, at *4 (E.D. Va. Apr. 13, 2007) (refusing to consider new facts and claims raised in opposition to motion to dismiss because such "allegations were not contained in" the complaint).

Based on the facts alleged, Barnes fails to plausibly present facts showing that Bevins knew of and disregarded an excessive risk to his health and safety and Barnes' claim against Defendant Bevins must be dismissed.[9]

## III. CONCLUSION

For the reasons stated, Barnes' complaint and other filings, liberally construed, fail to state a claim upon which relief may be granted under § 1983. Therefore, I will grant Defendant Bevins' motion to dismiss under Rule 12(b)(6) and dismiss the claims against her. Appropriate orders accompany this opinion.

Entered: September 2, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

[9] I find it unnecessary to address any additional arguments raised in the memorandum in support of the motion to dismiss as the result will be the same.